**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**Civil Action No. 5:26-CV-00041-MEO-DCK**

| | |
|---|---|
| **VICTORIA JOLLY,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**SHERIFF DONALD G. BROWN II, in his individual and official capacities as Sheriff of Catawba County; AARON TURK, in his individual and official capacities; BRIAN KELLY, in his individual and official capacities; THAD SCRONCE, in his individual and official capacities; MIKE HOYLE, in his individual and official capacities; and JOHN DOE SURETY,**<br><br>**Defendants.** | **DEFENDANT BRIAN KELLY'S MEMORANDUM IN SUPPORT OF HIS MOTION FOR JUDGMENT ON THE PLEADINGS** |

## I. INTRODUCTION

Defendant Brian Kelly is entitled to judgment as a matter of law because Plaintiff has failed to plead any individualized factual allegations against him sufficient to state a cognizable claim. Plaintiff attempts to equate a private personnel grievance with a matter of public concern, yet fails to allege any speech addressing a political, social, or community issue necessary to support a First Amendment retaliation claim under 42 U.S.C. § 1983. Plaintiff likewise fails to plead any causal connection between her alleged workplace report and the injuries she claims, which instead center on unrelated allegations concerning her Giglio status, F-5 designation, and other employment-related actions not attributable to Defendant Kelly. Further, even assuming Plaintiff has adequately alleged a constitutional violation, Defendant Kelly is nonetheless entitled to qualified immunity. Accordingly, based upon the pleadings before the Court, Defendant Kelly is entitled to judgment



Case 5:26-cv-00041-MEO-DCK Document 7 Filed 05/26/26 Page 1 of 17

as a matter of law and dismissal of all claims asserted against him in both his individual and official capacities.

## II. BACKGROUND AND FACTUAL ALLEGATIONS

Plaintiff Victoria Jolly brings a variety of federal claims against Sheriff Donald G. Brown II ("Defendant Brown"), Aaron Turk ("Defendant Turk"), Brian Kelly ("Defendant Kelly"), Thad Scronce ("Defendant Scronce") and Mike Hoyle ("Defendant Hoyle"), in their individual and official capacities.[1] [Doc. 1]. These claims are based on the events surrounding Plaintiff's employment and subsequent resignation at the Catawba County Sheriff's Office ("CCSO"). *Id*.

Plaintiff filed her Complaint on February 26, 2026, alleging five causes of action. *Id*. ¶¶ 96-131. Four of the five causes of action are brought pursuant to 42 U.S.C. § 1983. *Id*. ¶¶ 96-123. Specifically, Plaintiff asserts claims for "First Amendment Retaliation" against all Defendants in their individual capacities; "Fourteenth Amendment Liberty Interest (Stigma-Plus)" and "Fourteenth Amendment Procedural Due Process" against all Defendants in their individual capacities and against Defendant Brown in his official capacity; and "Official Capacity / Final Policymaker Liability" against Defendant Brown in his official capacity. *Id*. Plaintiff's fifth cause of action, "Disability Discrimination," is asserted against Defendant Brown in his official capacity pursuant to 29 U.S.C. § 794. *Id*. ¶¶ 124-31.

Plaintiff's allegations against Defendant Kelly are sparse. Of the ninety-five paragraphs comprising of the body of the Complaint, only two paragraphs refer to Defendant Kelly, and those

[1] Although the case caption identifies Defendant Kelly as being sued in both his individual and official capacities, the substantive allegations and causes of action in the Complaint appear to assert claims against him only in his individual capacity. To the extent Plaintiff nevertheless intended to assert official capacity claims against Defendant Kelly, those claims are duplicative of Plaintiff's official capacity claims against Defendant Brown and should be dismissed. *See Ridpath v. Bd. of Governors Marshall Univ*., 447 F.3d 292, 307 n.13 (4th Cir. 2006) (holding § 1983 claims against the administrators of a defendant board in their official capacities were duplicative of § 1983 claims against the board); *see also Smith v. Dance*, No. 4:21-CV-103-FL, 2022 WL 2392863, at *7 n.2 (E.D.N.C. July 1, 2022).

paragraphs identify a single alleged interaction involving him. Specifically, Plaintiff alleges that she reported to Defendant Kelly that she had received "sexually inappropriate communications from a deputy, Kyle Lawrence, including solicitations and messages of a sexual nature," and that Defendant Kelly thereafter failed to initiate meaningful corrective action in response to that report. *Id*. ¶¶ 40-41. Beyond those allegations concerning that single interaction, the Complaint relies primarily on undifferentiated references to "Defendants" collectively, without alleging facts establishing a personal or causal connection between Defendant Kelly and the broader conduct attributed to "Defendants" as a group.

Although Plaintiff frequently refers to "Defendants" collectively, the Complaint attributes certain alleged conduct to particular defendants. For example, with respect to Plaintiff's allegations concerning the alleged "bias against children" narrative, Plaintiff ties the creation and dissemination of that narrative, as well as the alleged resulting adverse employment consequences, to Defendant Turk. *Id*. ¶¶ 28-29. Likewise, with respect to the allegations concerning the North Carolina Criminal Justice Education and Training Standards Commission F-5 Report of Separation ("F-5 Report"), which allegedly reflected "substantiated allegation(s) of untruthfulness" against Plaintiff, Plaintiff attributes that conduct to Defendant Brown. *Id*. ¶ 79.

Plaintiff's claims against Defendant Kelly fail as a matter of law. First, Plaintiff's alleged report to Defendant Kelly regarding Kyle Lawrence does not constitute speech on a matter of public concern sufficient to state a First Amendment retaliation claim. Alternatively, Defendant Kelly is entitled to qualified immunity because existing law did not clearly establish that Plaintiff's alleged report to him constituted protected speech on a matter of public concern. Second, Plaintiff fails to allege facts establishing a causal connection between Defendant Kelly and either alleged

Fourteenth Amendment deprivation. Accordingly, Plaintiff's claims against Defendant Kelly should be dismissed with prejudice.

## III. Legal Standards

### A. Motion for Judgment on the Pleadings

"After the pleadings are closed—but early enough to not delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In resolving a motion for judgment on the pleadings, the court must accept all of the nonmovant's factual averments as true and draw all reasonable inferences in their favor. *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Judgment on the pleadings is warranted where the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. *Bradley v. Ramsey*, 329 F.Supp.2d 617, 622 (W.D.N.C. 2004) (citing Moore's Federal Practice, § 12.38 (3d ed.)). The standard is similar to that used in ruling on a Rule 12(b)(6) motion "with the key difference being that on a 12(c) motion, the court is to consider the answer as well as the complaint." *Continental Cleaning Serv. v. United Parcel Serv., Inc.*, 1999 WL 1939249, at *1 (M.D.N.C. April 13, 1999) (internal citations omitted).

Applying the Rule 12(b)(6) standard in the context of a Rule 12(c) motion, the question for the Court is whether the plaintiff has stated a claim against the defendant that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the plaintiff alleges facts that would allow the Court to draw a reasonable inference that the defendant could be liable for the alleged misconduct. *Id*. However, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). In other words, the well-pleaded facts must "permit the court to infer more

than the mere possibility of misconduct"; otherwise, the plaintiff has not shown entitlement to relief. *Id*. at 679.

### B. 42 U.S.C. § 1983

§ 1983 provides for liability against "[e]very person who, under color of [state law], subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. § 1983, however, "is not itself a source of substantive rights," but instead provides "a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). To state a claim under § 1983, a plaintiff must allege that: (1) the defendant deprived the plaintiff of a right secured by the Constitution and laws of the United States; and (2) the defendant acted under the color of state law in causing that deprivation. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

## IV. ARGUMENT

### A. Plaintiff's First Amendment Retaliation Claim Fails as a Matter of Law

#### i. Plaintiff's First Amendment retaliation claim fails because her alleged report to Defendant Kelly constitutes a private personnel grievance rather than speech on a matter of public concern.

Plaintiff's report to Defendant Kelly concerned her own workplace grievances and conditions of employment rather than any broader systemic misconduct or department-wide discrimination rising to the level of public concern. "In order to make out a First Amendment retaliation claim, Plaintiff must show that (1) she spoke as a citizen on a matter of public concern, rather than as an employee on a matter of personal interest; (2) the employee's interest in her expression outweighed the employer's 'interest in providing effective and efficient services to the public'; and (3) the employee's speech was a 'substantial factor' in the adverse employment

action." *Massaro v. Fairfax Cnty.*, 95 F.4th 895, 905 (4th Cir. 2024) (quoting *McVey v. Stacy*, 157 F.3d 271, 277-78 (4th Cir. 1998)).

The first element of the test is the "threshold question." *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 316 n.26 (4th Cir. 2006) (quoting *Rankin v. McPherson*, 483 U.S. 378, 384 (1987)). The Court must examine the "content, form, and context of a given statement" to discern whether it qualifies as an expression on a matter of public concern. *Connick v. Myers*, 461 U.S. 138, 147-48 (1983). An employee's expression "involves a matter of public concern when it involves an issue of social, political, or other interest to a community." *Urofsky v. Gilmore*, 216 F.3d 401, 406 (4th Cir. 2000) (en banc). This excludes speech that is "of purely personal concern to the employee—most typically, a private personnel grievance." *Berger v. Battaglia*, 779 F.2d 992, 998 (4th Cir. 1985) (internal quotation marks omitted). "At bottom, the focus is . . . upon whether the public or the community is likely to be truly concerned with or interested in the particular expression, or whether it is more properly viewed as essentially a private matter between employer and employee." *Massaro*, 95 F.4th at 906 (citing *Berger*, 779 F.2d at 999) (internal quotation marks omitted).

The Fourth Circuit's decision in *Campbell v. Galloway* illustrates the distinction between a private workplace grievance and speech addressing broader public or departmental concerns. In *Campbell*, the court evaluated a female police officer's allegation of sexual harassment and gender discrimination, noting that "a complaint about sexual harassment or discrimination is not always a matter of public concern." 483 F.3d 258, 268 (4th Cir. 2007). There, the plaintiff satisfied the *Connick* standard because her complaints extended beyond her own workplace grievances and included allegations implicating broader public and departmental concerns, including allegations that male officers failed to back her up on dangerous calls and complaints regarding inappropriate

conduct directed toward other female officers and female members of the public. *Id*. at 269-70. The court further emphasized that the plaintiff was not attempting "to resolve her own personal problem," but instead sought "to challenge the practice within the department as much as she was seeking a resolution of her own complaint." *Id*. at 270.

Unlike the speech issue in *Campbell*, Plaintiff's alleged report to Defendant Kelly did not seek to expose broader misconduct, discrimination, or unsafe practices within CSSO. Plaintiff does not allege that she reported a broader pattern of sexual harassment or gender-based misconduct involving other female officers, female members of the public, or systemic department-wide practices. Rather, Plaintiff alleges only that she reported communications directed toward her personally. Thus, Plaintiff alleged report concerned "improvement in [her] own situation," rather than an effort "to communicate to the public or to advance a political or social point of view." *Brooks v. Arthur*, 685 F.3d 367, 369-79, 374 (4th Cir. 2012); *see also DeGroat v. DeFebo*, 87 F.Supp.3d 706, 718-24 (M.D. Pa. 2015) (distinguishing *Campbell* and holding that isolated complaints of gender discrimination and sexual harassment did not constitute speech on a matter of public concern); *see also Whitehurst v. Bedford Cnty. Sch. Bd.*, No. 6:19-CV-00010, 2020 WL 3643132, at *10-11 (W.D. Va. July 6, 2020) (applying *Campbell* and holding that plaintiff's internal sex-discrimination complaint was not speech on a matter of public concern where it concerned discriminatory conditions of employment she personally faced from her supervisor, rather than systemic discrimination within the school system).

The form and context of Plaintiff's alleged report further confirm that it was not speech on a matter of public concern. "The forum in which a petition is lodged will be relevant to the determination whether the petition relates to a matter of public concern." *Connick*, 461 U.S. at 147. Notably, "[a] petition filed with an employer using an internal grievance procedure in many

cases will not seek to communicate to the public or to advance a political or social point of view beyond the employment context." *Borough of Duryea, Pa v. Guarnieri*, 564 U.S. 379, 398 (2011).

Here, the form and context of Plaintiff's alleged report were private and internal. Plaintiff alleges only that she reported Lawrence's conduct privately to Defendant Kelly. She does not allege that she made any public statement, reported the matter through any public-facing channel, sought to alert the community to broader misconduct, or attempted to advance any political or social point of view beyond her own employment circumstances. Thus, the form and context of Plaintiff's alleged report further demonstrate that it constituted a private workplace grievance rather than protected speech on a matter of public concern. *See Massaro v. Fairfax Cnty.*, 95 F.4th 895, 905-07 (4th Cir. 2024) (holding that an internal discrimination grievance was not speech on a matter of public concern where the plaintiff sought to address his own alleged mistreatment rather than draw public attention to department-wide problems).

For the foregoing reasons, Plaintiff's alleged complaint to Defendant Kelly does not constitute speech on a matter of public concern, and her First Amendment retaliation claim therefore fails as a matter of law.

**ii. Alternatively, Defendant Kelly is entitled to qualified immunity because it was not clearly established that Plaintiff's alleged speech addressed a matter of public concern.**

Even assuming arguendo that Plaintiff's alleged report to Defendant Kelly concerning Kyle Lawrence's communications could be construed as touching on a matter of public concern, Defendant Kelly is nevertheless entitled to qualified immunity because existing law did not clearly establish that the alleged report constituted protected speech under the First Amendment. Qualified immunity protects government officials "who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful."

*Liverman v. City of Petersburg*, 844 F.3d 400, 411 (4th Cir. 2016). To overcome qualified immunity, a plaintiff must show both that the official violated a constitutional right and that the right was clearly established at the time of the alleged violation. *Hunter v. Town of Mocksville*, 789 F.3d 389, 397 (4th Cir. 2015).

Qualified immunity is appropriately resolved at the earliest possible stage of litigation because it is "an immunity from suit rather than a mere defense to liability." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (citation and internal quotations omitted). Accordingly, the Supreme Court has emphasized, "the importance of resolving immunity questions at the earliest possible stage in litigation." *Id*. Indeed, "the purpose of qualified immunity is to remove most civil liability actions, except those where the official clearly broke the law, from the legal process well in advance of the submission of facts to a jury." *Slattery v. Rizzo*, 939 F.2d 213, 216 (4th Cir. 1991) (citation omitted); *see also Gooden v. Howard Cty.*, 954 F.2d 960, 965 (4th Cir. 1992) ("[T]he basic purpose of qualified immunity . . . is to spare individual officials the burdens and uncertainties of standing trail in those instances where their conduct would strike an objective observer as falling within the range of reasonable judgment.") (citation omitted).

Although it was clearly established at the time of Plaintiff's alleged report that a public employee may not be retaliated against for constitutionally protected speech, that general principle does not resolve the qualified immunity inquiry here. The clearly established right must not be defined at a high level of generality. *See Campbell*, 483 F.3d at 271. Rather, "the determination of whether a given right was clearly established" requires the Court "to define that right 'at a high level of particularity.'" *Id*. (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 251 (4th Cir. 1999)). Accordingly, the relevant question is whether existing precedent would have placed Defendant Kelly on notice that Plaintiff's alleged report concerning Kyle Lawrence's

communications constituted speech on a matter of public concern. Under the circumstances alleged here, it would not. *See Pike v. Osborne*, 301 F.3d 182, 185 (4th Cir. 2002) ("Only infrequently will it be 'clearly established' that a public employee's speech on a matter of public concern is constitutionally protected, because the relevant inquiry requires a 'particularized balancing' that is subtle, yet difficult to apply, and not yet well defined.") (quotation omitted).

*Campbell* is once again instructive. There, although the Fourth Circuit concluded that the plaintiff's complaint touched on matters of public concern, it nevertheless held that the defendant officials were entitled to qualified immunity because the speech fell within the gray area between protected public concern speech and private workplace grievances. 483 F.3d at 271-72. In reaching that conclusion, the court acknowledged the limited guidance in existing law regarding when complaints about workplace harassment or discrimination rise to the level of public concern. *Id*. at 271. Rather than adopting a bright-line rule, the court maintained a fact-specific inquiry, further demonstrating that the line between constitutionally protected speech and private personnel grievances is not clearly drawn in this context. *Id*.; *see also McVey v. Stacey*, 157 F.3d 271, 277 (4th Cir. 1998) ("Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.").

For the reasons set forth above in Section IV(A)(i), Defendant Kelly could reasonably view Plaintiff's alleged report as a private workplace grievance rather than speech on a matter of public concern. In light of the absence of any bright-line rule in this Circuit and the fact-specific nature of the inquiry, Defendant Kelly cannot be held liable for a reasonable, even if ultimately incorrect, assessment of how existing First Amendment law applied to the facts of this case.

### B. Plaintiff Fails to Establish an Affirmative Causal Connection Between Defendant Kelly and Any Alleged Fourteenth Amendment Deprivation

Plaintiff's Fourteenth Amendment claims against Defendant Kelly, brought pursuant to § 1983, fail as a matter of law because the Complaint does not allege facts showing that Defendant Kelly personally participated in the alleged stigma-plus deprivation or the alleged denial of procedural due process. In Count II, Plaintiff asserts a stigma-plus claim based on alleged credibility-based stigmatization, including the "bias against children" narrative and the later F-5 Report "substantiated allegation(s) of untruthfulness" designation. [Doc. 1 ¶¶ 105-11]. In Count III, Plaintiff asserts a procedural due process claim based on the alleged failure to provide notice, an opportunity to respond, written findings, or a meaningful name-clearing hearing before or after the F-5 Report designation was recorded and transmitted. *Id*. ¶¶ 113-18. Both claims therefore require facts plausibly connecting Defendant Kelly to the alleged publication of stigmatizing charges, the adverse employment consequences flowing from those charges, or the denial of process related to the F-5 Report designation. As against Defendant Kelly, the Complaint contains no such allegations.

The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV § 1. To succeed on a due process claim, whether substantive or procedural, "a plaintiff must first show that he has a constitutionally protected liberty interest or property interest and [second] that he has been deprived of that protected interest by some form of state action." *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 172 (4th Cir. 1988). Here, Plaintiff alleges a liberty interest in her reputation and in pursuing her chosen profession in law enforcement free from stigmatizing state action that, when coupled with adverse employment action, allegedly forecloses future law-enforcement employment opportunities.

Even assuming Plaintiff has adequately alleged a protected liberty interest, § 1983 requires more than allegations that a constitutional deprivation occurred. "§ 1983 must be read against the background of tort liability that makes a man responsible for the natural consequences of his actions, [but] liability will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff['s] rights." *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977). "The doctrine of respondeat superior has no application under this section." *Id.* Thus, a plaintiff must allege a "personal connection between [each individual defendant] and any denial of [plaintiff's] constitutional rights." *Id.*; *see Smith v. Dance*, No. 4:21-CV-1030-FL, 2022 WL 2392863, at *8 (E.D.N.C. July 1, 2022) ("[42 U.S.C. § 1983 . . . require[s] proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivations.") (quoting *Swint v. City of Wadley*, 51 F.3d 988, 999 (11th Cir. 1995)). Plaintiff's failure to allege facts showing Defendant Kelly's personal involvement in any alleged Fourteenth Amendment deprivation is dispositive.

**i. Plaintiff fails to state a stigma-plus claim against Defendant Kelly because the Complaint pleads no facts connecting him to the alleged stigmatizing publications or resulting employment consequences.**

Plaintiff's stigma-plus claim fails against Defendant Kelly because the Complaint does not allege facts personally connecting him to the alleged stigmatizing publications or to the employment consequences allegedly flowing from them. To state a "stigma-plus" claim, "a plaintiff must allege that the charges against [her]: (1) placed a stigma on [her] reputation; (2) were made public by the employer; (3) were made in conjunction with [her] termination or demotion; and (4) were false." *Sciolino v. City of Newsport News, Va.*, 480 F.3d 642, 646 (4th Cir. 2007). Here, Plaintiff's stigma-plus claim rests on two alleged categories of credibility-based stigma:

disciplinary narratives reflecting alleged "bias against children" and the later F-5 Report designation reflecting "substantiated allegation(s) of untruthfulness." [Doc. 1 ¶ 105].

Although Count II is asserted against all Individual Defendants and Defendant Brown in his official capacity, the factual allegations tie those alleged stigmatizing publications to Defendants Turk and Brown, not Defendant Kelly. Specifically, Plaintiff alleges that Defendant Turk reframed Plaintiff's handling of the Peyton matter as "bias against children" and "interference with due process," and that he issued the written reprimand imposing discipline, including demotion and reassignment. *Id*. ¶¶ 28-30. Plaintiff further alleges that, after her separation, CCSO caused the F-5 Report to be completed, filed, and transmitted, and that Defendant Brown signed the F-5 Report. *Id*. ¶¶ 78-81. Those allegations identify conduct by Defendants Turk and Brown, but they do not identify any conduct by Defendant Kelly connecting him to either alleged stigmatizing publication or to the adverse employment consequences Plaintiff identifies as the required "plus" factor. *See Smith v. Dance*, No. 4:21-CV-103-FL, 2022 WL 2392863, at *7-8 (E.D.N.C. 2022) (finding an affirmative causal connection where the complaint alleged that each individual defendant either signed Plaintiff's termination report or F-5 Report of Separation).

Unlike the defendants in *Smith*, Defendant Kelly is not alleged to have signed, submitted, approved, or otherwise caused the publication of any F-5 Report[2] or other stigmatizing document. Instead, the only specific allegations personally involving Defendant Kelly concern Plaintiff's report regarding Kyle Lawrence's communications. Those allegations do not plausibly connect Defendant Kelly to the stigma-plus deprivation alleged in Count II.

[2] Defendant Kelly further maintains that he had no authority to complete, sign, file, or transmit the F-5 Report of Separation under 12 N.C. Admin. Code 10B.0405 because he was neither the agency head nor an authorized agency representative. *See* 12 N.C. Admin. Code 10B.0405(b) ("The Report of Separation (Form F-5 or F-5T) shall include . . . the signature of the agency head or authorized agency representative.").

For the foregoing reasons, Count II should be dismissed as against Defendant Kelly because the Complaint fails to allege his personal involvement in the alleged stigma-plus deprivation. *Vinnedge*, 550 F.2d at 928; *see also Manion v. Carolina Med. Bd.*, No. 5:16-CV-63-BO, 2016 WL 4523902 (E.D.N.C. Aug. 22, 2016), aff'd, 693 F. App'x 178 (4th Cir. 2017) (dismissing claims against the North Carolina Medical Society where, although most claims were asserted against all defendants, the complaint failed to allege specific facts supporting a plausible conclusion that the Medical Society was liable for any wrongdoing).

**ii. Plaintiff fails to state a procedural due process claim against Defendant Kelly because the Complaint pleads no facts connecting him to the alleged denial of any process related to the F-5 Report.**

Count III, as brought against Defendant Kelly, fails for the same reason as Count II: the Complaint does not allege facts personally connecting Defendant Kelly to the alleged Fourteenth Amendment deprivation. Count III focuses on CCSO's alleged failure to provide pre-publication notice of the F-5 "untruthfulness" designation, disclose supporting evidence, provide Plaintiff with a meaningful opportunity to respond, or afford Plaintiff a name-clearing hearing. [Doc. 1 ¶¶ 115-17]. But, as set forth above, the Complaint fails to allege facts establishing any causal connection between Defendant Kelly and the completion or transmission of the F-5 Report. Likewise, the Complaint does not allege facts connecting Defendant Kelly to the process Plaintiff claims was required before or after the F-5 Report was completed or transmitted. *Cf. Smith v. Dance*, 2022 WL 2392863, at *7-8 (finding an affirmative causal connection where the complaint alleged that each individual defendant either signed Plaintiff's termination report or F-5 Report of Separation).

Plaintiff's collective assertion of Count III against all Individual Defendants does not cure the aforementioned pleading deficiency. Courts are critical "of complaints that 'fail[] to isolate the allegedly unconstitutional acts of each defendant[.]" *Langford v. Joyner*, 62 F.4th 122, 125

(4th Cir. 2023) (citing *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) ); *see generally Robbins*, 519 F.3d 1242, 1250 (10th Cir. 2008) ("[I]t is particularly important in [§ 1983 cases against multiple government actors in their individual capacities] that the complaint make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective actions against the state."). Here, Plaintiff expressly attributes the F-5 Report to Defendant Brown, and the body of the Complaint contains no facts showing that Defendant Kelly had any role in its completion, transmission, designation, or related process. Plaintiff's collective reference to all Individual Defendants therefore cannot supply the personal involvement required to state Count III against Defendant Kelly.

## V. CONCLUSION

For the foregoing reasons, Defendant Brian Kelly respectfully requests that the Court grant his Motion for Judgment on the Pleadings and dismiss all claims asserted against him, in both his individual and official capacities, with prejudice.

**This the 26th day of May, 2026.**


**HEDRICK GARDNER KINCHELOE & GARFALO LLP**

**By: /s/ John L. Wright**
**JOHN L. WRIGHT**
**N.C. State Bar. No. 45554**
**DANIELLE K. KAMINSKI**
**N.C. State Bar No. 63679**
**4201 Congress St., Suite 300**
**Charlotte, NC 28209**
**Direct (John): 704-319-5436**
**Direct (Danielle): 704-731-2040**
**jwright@hedrickgardner.com**
**dkaminski@hedrickgardner.com**
***Attorneys for Defendant Brian Kelly***

**<u>DEFENDANT BRIAN KELLY'S CERTIFICATE OF COMPLIANCE</u>**

Pursuant to the June 18, 2024, Standing Order of this Court *In Re: Use of Artificial Intelligence,* 3:24-mc-104, the undersigned submits the following certification in relation to the foregoing Response:

1. No artificial intelligence was employed in doing the research for the preparation of this Memorandum, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg, as well as Google and Google Scholar;
2. Every statement and every citation to an authority contained in this Memorandum has been checked by an attorney in this case as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

**This the 26th day of May, 2026.**

**By: <u>/s/ John L. Wright</u>**
**JOHN L. WRIGHT**

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of May, 2026, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

**This the 26th day of May, 2026.**

**HEDRICK GARDNER KINCHELOE & GARFALO LLP**

**By: /s/ John L. Wright**
**JOHN L. WRIGHT**