**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**STATESVILLE DIVISION**

Civil Action No. 5:26-CV-00041-MEO-DCK

| | | |
|---|---|---|
| **VICTORIA JOLLY,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS** |
| | ) | |
| **SHERIFF DONALD G. BROWN II,** | ) | |
| **in his individual and official capacities** | ) | |
| **as Sheriff of Catawba County;** | ) | |
| **AARON TURK,** | ) | |
| **in his individual and official capacities;** | ) | |
| **BRIAN KELLY,** | ) | |
| **in his individual and official capacities;** | ) | |
| **THAD SCRONCE,** | ) | |
| **in his individual and official capacities;** | ) | |
| **MIKE HOYLE,** | ) | |
| **in his individual and official capacities;** | ) | |
| **and JOHN DOE SURETY,** | ) | |
| Defendants. | ) | |

## INTRODUCTION

Defendant Brian Kelly's Rule 12(c) motion asks the Court to do what Rule 12(c) does not permit: isolate two paragraphs that expressly name Defendant Kelly, disregard the Complaint's incorporated allegations against the command-staff Defendants acting together, draw inferences against Plaintiff, and decide fact-intensive questions of public concern, causation, personal participation, and qualified immunity before discovery.

The Complaint plausibly alleges that Defendant Kelly was not just a bystander. Defendant Kelly was a command-level CCSO officer with supervisory authority who received Plaintiff's report that Deputy Kyle Lawrence had sent sexually inappropriate communications, including sexual solicitations; responded in a manner that discouraged

formal accountability by suggesting an "anonymous note"; and thereafter participated, as part of CCSO command staff, in the course of retaliation and credibility-based stigmatization that followed Plaintiff's reporting. *Compl.* ¶¶ 18, 39–48, 97–103. The Complaint alleges that Defendants escalated scrutiny and discipline against Plaintiff after her report, used minor matters to inappropriately paper her file, isolated her, subjected her to coercive internal-affairs procedures while medically impaired, forced her separation, and caused a career-ending "substantiated allegation(s) of untruthfulness" designation to be published through the State F-5 process without a name-clearing hearing. *Compl.* ¶¶ 45–48, 57–73, 78–89, 100–110, 115–118. Those allegations must be accepted as true and construed in Plaintiff's favor.

Defendant's Kelly's First Amendment argument fails because Plaintiff did not merely complain about a private slight. She reported sexual and inappropriate misconduct by a sworn law-enforcement officer to command staff inside a sheriff's office, and the Complaint alleges that her report concerned "integrity and misconduct within a law-enforcement agency," "abuse of authority," "workplace sexual misconduct," and command accountability. *Compl.* ¶¶ 39–44, 97–99. Fourth Circuit law recognizes that complaints by law-enforcement officers can address matters of public concern where, as pleaded here, the speech implicates officer misconduct, integrity, public trust, and agency accountability. Kelly's attempt to recast the report as a purely personal grievance ignores the Complaint's actual allegations and improperly resolves the context-and-content inquiry against Plaintiff.

Defendant Kelly's Fourteenth Amendment argument fails for the same threshold reason. The Complaint alleges that all Individual Defendants imposed and published credibility stigma; that Defendants acted through official channels and processes; that the stigma was tied to adverse employment action and Plaintiff's separation; and that Defendants denied Plaintiff any meaningful name-clearing process. *Compl.* ¶¶ 104–118. Kelly may later attempt to prove that he had no role in those events. But the pleadings, read as a whole and in Plaintiff's favor, do not establish his entitlement to judgment as a matter of law. Accordingly, the motion for Judgment on the Pleadings pursuant to Rule 12(c) should be denied.

## FACTUAL BACKGROUND

At the pleading stage, Plaintiff's factual allegations must be accepted as true. The Court therefore must assume the facts that are alleged in the complaint are true and make all reasonable factual inferences in favor of the Plaintiff. *Burbach Broadcasting Co. of Del. v. Elkins Radio*, 278 F.3d 401 (4th Cir. 2002). Plaintiff Victoria Jolly was a sworn deputy with CCSO beginning on or about January 9, 2021, with duties requiring report writing, sworn documents, investigations, and testimony. *Compl.* ¶¶ 13, 22–24. Credibility was essential to her profession, and Defendants, including Defendant Brian Kelly understood that branding a deputy as dishonest or untruthful foreseeably triggers Giglio impairment, undermines prosecutorial confidence, and functions as a career-ending sanction in law enforcement. *Compl.* ¶¶ 23–25.

Defendant Kelly was, at all relevant times, a command-level CCSO officer with supervisory authority who "received and/or acted upon reports of misconduct and participated in decisions and actions relevant to Plaintiff's discipline, treatment, and

separation." *Compl.* ¶ 18. That allegation is not a legal conclusion; the allegations identifies Defendant Kelly's role within the command structure and his alleged participation in the very categories of conduct challenged in this case.

Plaintiff later received sexually inappropriate communications from Deputy Kyle Lawrence, including solicitations and sexual messaging. *Compl.* ¶ 39. Plaintiff reported that misconduct to Defendant Kelly, a command-level officer. *Compl.* ¶ 40. The report was made "as a complaint about workplace misconduct and abuse of authority within CCSO," not as part of Plaintiff's assigned investigative duties. *Compl.* ¶ 40. Instead of initiating prompt corrective action, command staff responded in a way that discouraged formal reporting and increased Plaintiff's vulnerability; and Defendant Kelly suggested that Plaintiff could submit the complaint indirectly by placing an "anonymous note" for command staff. *Compl.* ¶ 41. The response signaled that CCSO leadership was unwilling to handle the matter through ordinary accountability mechanisms and shifted risk back to Plaintiff, the reporting employee. *Compl.* ¶ 42. Lawrence remained on duty without meaningful sustained corrective action apparent to Plaintiff. *Compl.* ¶ 43.

The Complaint expressly alleges that Plaintiff's report concerned matters beyond a private personnel dispute: "integrity and misconduct within a law-enforcement agency" and "abuse of authority and workplace sexual misconduct." *Compl.* ¶ 44. After Plaintiff reported Lawrence's conduct, Defendants escalated scrutiny and selective discipline directed at Plaintiff; criticized and disciplined her over minor incidents not treated similarly for male deputies; used minor matters to build a narrative of "unfitness"; and isolated and pressured her while shielding favored employees. *Compl.* ¶¶ 45–48.

That retaliation later intersected with Plaintiff's on-duty rollover accident and post-concussion medical restrictions. *Compl.* ¶¶ 49, 53–57. CCSO placed Plaintiff on investigation status with pay, barred her from the worksite and systems, and required her to surrender equipment and credentials. *Compl.* ¶¶ 58–60. Defendants then escalated a brief listening incident into a major internal-affairs matter, notwithstanding Plaintiff's documented concussion/mTBI period. *Compl.* ¶¶ 61–65. On December 9, 2025, after medical documentation reflected that Plaintiff was unable to work and subject to restrictions, Defendants proceeded with a high-stakes internal-affairs interrogation; refused to slow questioning despite Plaintiff's concussion symptoms; accused her of dishonesty; and communicated that she faced resignation or termination with official dishonesty branding. *Compl.* ¶¶ 66–73. Plaintiff resigned under duress. *Compl.* ¶¶ 75–77.

After separation, CCSO completed, filed, and transmitted an F-5 Report of Separation marking "yes" to "substantiated allegation(s) of untruthfulness," despite the absence of a criminal investigation, Commission rule violation, evidentiary hearing, or meaningful opportunity to respond. *Compl.* ¶¶ 78–83. Defendants knew or should have known that the designation would impair Plaintiff's ability to obtain or retain law-enforcement employment, and that harm materialized when the Lincoln County Sheriff's Office and Troutman Police Department rejected Plaintiff because of the Giglio/F-5 credibility designation. *Compl.* ¶¶ 82–85, 90–95. Defendants never provided a meaningful name-clearing hearing or comparable process. *Compl.* ¶¶ 86–89.

The Complaint asserts First Amendment retaliation against Defendant Kelly and the other Individual Defendants, alleging protected speech concerning law-enforcement integrity, workplace sexual misconduct, command accountability, and misuse of internal

processes. *Compl.* ¶¶ 96–103. It also asserts Fourteenth Amendment stigma-plus and procedural due process claims against all Individual Defendants, alleging that Defendants imposed and published stigmatizing credibility accusations in connection with adverse employment action and denied Plaintiff meaningful process. *Compl.* ¶¶ 104–118.

**STANDARD OF REVIEW**

A Rule 12(c) motion is governed by the same plausibility standard applicable under Rule 12(b)(6). The Court must accept the nonmovant's well-pleaded factual allegations as true and draw all reasonable inferences in the nonmovant's favor. *Edwards v. City of Goldsboro,* 178 F.3d 231, 243–44 (4th Cir. 1999). Judgment on the pleadings is proper only where, taking those facts and inferences in Plaintiff's favor, Defendant Kelly is entitled to judgment as a matter of law. *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 591 (4th Cir. 2004).

Rule 12(c) is not a vehicle for weighing the strength of Plaintiff's evidence prior to discovery, post discovery scrutiny is more properly reserved for summary judgment. The issue is whether the Complaint gives Defendant Kelly fair notice of the claims and pleads factual content that permits a reasonable inference of liability. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555–57 (2007). Plaintiff's allegations easily satisfy that standard.

## ARGUMENT

### I. The Complaint Plausibly States a First Amendment Retaliation Claim Against Kelly

To plead a First Amendment retaliation claim by a public employer, Plaintiff Jolly must allege that she spoke as a citizen on a matter of public concern, that her interest in speaking outweighed the government's interest in efficient service, and that the speech was a substantial factor in the adverse action. *Massaro v. Fairfax Cnty*., 95 F.4th 895, 905-06 (4th Cir. 2024); *McVey v. Stacy,* 157 F.3d 271, 277–78 (4th Cir. 1998). Defendant Kelly challenges only the public-concern and causation components, and both challenges fail at the pleading stage.

#### A. Plaintiff's report involved law-enforcement integrity, officer misconduct, abuse of authority, and workplace sexual misconduct—not merely a private personnel grievance.

Whether speech addresses a matter of public concern turns on the content, form, and context of the speech, viewed in the whole record. *Connick v. Myers,* 461 U.S. 138, 147–48 (1983*)*. Speech involves public concern when it relates to "any matter of political, social, or other concern to the community." *Id.* at 146. In law-enforcement settings, the public has an obvious interest in officer misconduct, agency integrity, retaliation against whistleblowers, and whether command staff protect favored officers from accountability.

The Complaint pleads exactly that. Plaintiff alleges that she reported sexually inappropriate communications and sexual solicitations by a sworn deputy to Defendant Kelly, a command-level officer. *Compl.* ¶¶ 39–40*.* She made the report as a complaint

about "workplace misconduct and abuse of authority within CCSO," outside any assigned duty to investigate or adjudicate Lawrence's misconduct. *Compl.* ¶ 40. The report concerned "integrity and misconduct within a law-enforcement agency" and was reasonably understood as a complaint about "abuse of authority and workplace sexual misconduct." *Compl.* ¶ 44. Those well pleaded allegations must be accepted as true at this stage.

Defendant Kelly's argument depends on deleting those allegations and recasting the report as a private complaint about Plaintiff's personal workplace circumstances. That argument does is not supported by the Rule 12(c) standard. The pleaded content of the report implicated whether a sworn officer was engaging in sexual misconduct and whether sheriff's command staff would respond through legitimate accountability mechanisms or protect a favored deputy. *Compl.* ¶¶ 39–44. The pleaded context further confirms public concern: Plaintiff alleges that command staff's response discouraged formal reporting, shifted risk to the reporting employee, left the accused deputy on duty without meaningful sustained corrective action apparent to Plaintiff, and was followed by escalating retaliation against Plaintiff. *Compl.* ¶¶ 41–48.

Fourth Circuit precedent supports Plaintiff Jolly's position, not Defendant Kelly. In *Campbell v. Galloway,* 483 F.3d 258 (4th Cir. 2007*)*, the Fourth Circuit held that a police officer's complaints of sexual harassment and gender discrimination could involve matters of public concern where they were not limited to a private employment dispute but implicated departmental conduct, treatment of women, and officer safety. *Id.* at 269–70. Defendant Kelly cites *Campbell* as though it adopted a categorical rule that internal sexual-misconduct complaints are private unless pleaded in exhaustive detail. It did not.

*Campbell* requires a contextual inquiry. Specifically the Court in *Campbell* held: "[w]e see no reason to try to articulate any sort of bright-line rule in this case, nor are we certain that a bright-line rule would be consistent with the Supreme Court's directive that we engage in a case—and fact-specific inquiry to determine '[w]hether an employee's speech addresses a matter of public concern,' by considering 'the content, form, and context of a given statement, as revealed by the whole record.'" *Id.* at 269.

Here, the Complaint alleges that Plaintiff's speech concerned abuse of authority, officer misconduct, and law-enforcement integrity—precisely the kind of law-enforcement accountability issues the public is "likely to be truly concerned with or interested in." *Massaro*, 95 F.4th at 906. The allegations as pled throughout the complaint are consistent with requirements with *Campbell* and *Massaro*.

The same principle appears in other law-enforcement speech cases. In *Andrew v. Clark,* 561 F.3d 261 (4th Cir. 2009), the Fourth Circuit recognized the public-concern character of a police officer's speech seeking investigation into alleged police misconduct. And in *Durham v. Jones,* 737 F.3d 291 (4th Cir. 2013), the court held that reports of misconduct within a sheriff's office involved matters of public concern. The same conclusion is plausible here: Plaintiff's report addressed sexual misconduct by a deputy and abuse of authority inside a sheriff's office. *Compl.* ¶¶ 39–44, 97–99.

Nor does the internal form of Plaintiff's report defeat her claim. Public employees do not lose First Amendment protection merely because they initially report misconduct internally. The form of speech is relevant, but not dispositive. *Garcetti v. Ceballos,* 547 U.S. 410, 420–21 (2006). At a minimum, the Complaint plausibly alleges that Plaintiff

spoke as a citizen, not pursuant to assigned job duties, because she reported sexual misconduct directed to her and did so "not as part of any assigned investigative duty." *Compl*. ¶ 40.

Defendant Kelly's reliance on cases involving internal grievances about promotion, discipline, or personal employment conditions is misplaced. *Massaro*, for example, involved an internal grievance about the plaintiff's own promotion-related dispute, and the Fourth Circuit emphasized that the speech did not seek to inform the public or expose broader misconduct. *Massaro,* 95 F.4th at 906–08. Plaintiff's Complaint alleges the opposite: a report of sexual misconduct and abuse of authority in a law-enforcement agency, followed by command-level suppression, selective protection, and retaliatory misuse of internal discipline. *Compl.* ¶¶ 39–48, 97–103. At the pleading stage, that is more than enough.

**B. The Complaint plausibly alleges causation and Kelly's personal involvement in the retaliation.**

Defendant Kelly next argues that Plaintiff pleads no causal connection between him and the retaliatory course of conduct. That argument again relies on reading the Complaint in fragments rather than as a whole.

The Complaint alleges that Defendant Kelly was a command-level officer with supervisory authority who received and/or acted upon reports of misconduct and participated in decisions and actions relevant to Plaintiff's discipline, treatment, and separation. *Compl.* ¶ 18. It then alleges that Plaintiff reported Lawrence's sexual misconduct to Defendant Kelly; Defendant Kelly responded by suggesting an indirect

“anonymous note” rather than prompt formal accountability; command staff thereby signaled unwillingness to handle the matter through ordinary accountability mechanisms; and, after Plaintiff’s report, Defendants escalated scrutiny and selective discipline against her. *Compl.* ¶¶ 39–48. Count I incorporates those allegations and alleges that Defendants’ adverse actions were substantially motivated by Plaintiff’s protected activity, as shown by temporal proximity, escalation after reporting, selective enforcement, disparate treatment, retaliatory use of credibility-stigma mechanisms, forced separation, and stigmatizing state publication. *Compl.* ¶¶ 96–103.

Those allegations plausibly connect Defendant Kelly to the claim. A defendant’s personal participation under Section 1983 may be shown not only by the final act that completes the injury, but by participation in the chain of events that causes the constitutional deprivation. *Vinnedge v. Gibbs,* 550 F.2d 926, 928 (4th Cir. 1977). Defendant Kelly received the protected report, allegedly mishandled it in a way that discouraged formal accountability, and is alleged to have participated in decisions and actions relevant to Plaintiff’s discipline, treatment, and separation. *Compl.* ¶¶ 18, 39–48. Discovery will determine the precise scope of Defendant Kelly’s participation in the command-staff response; Rule 12(c) does not permit Defendant Kelly to obtain dismissal by insisting, before discovery, that Plaintiff plead internal command communications and decisionmaking details uniquely within Defendants’ possession.

The alleged adverse actions also satisfy the First Amendment standard. Plaintiff alleges heightened scrutiny, selective discipline, internal-affairs escalation, isolation through investigation status, coercive interrogation, constructive discharge, and publication of a career-ending untruthfulness designation. *Compl.* ¶¶ 45–48, 58–73, 75–

85, 100–103. Those actions would deter a person of ordinary firmness from reporting misconduct in a law-enforcement agency. *Compl.* ¶ 101.

Kelly may later argue that other command staff bore greater responsibility, that Kelly's participation was limited, or that causation cannot be proven. Those are merits and discovery issues. They are not grounds for judgment on the pleadings.

**C. Qualified immunity cannot be resolved in Defendant Kelly's favor on the pleadings.**

Kelly's qualified-immunity argument fails for two independent reasons. First, it rests on Kelly's disputed characterization of the speech as a private personnel grievance. But the Complaint alleges that Plaintiff reported sexual misconduct, abuse of authority, and integrity failures in a law-enforcement agency. *Compl*. ¶¶ 39–44, 97–9*9.* Accepting those allegations as true, Plaintiff's right to report law-enforcement misconduct and abuse of authority without retaliation was clearly established. *Durham v. Jones*, 737 F.3d 291, 302–04 (4th Cir. 2013); *Andrew v. Clark*, 561 F.3d 261, 268–69 (4th Cir. 2009); *Campbell v. Galloway*, 483 F.3d 258, 269–72 (4th Cir. 2007).

Second, qualified immunity often cannot be resolved at the pleading stage when the defense depends on disputed facts about what the plaintiff said, the context of the speech, what the defendant knew, and what role the defendant played in the retaliatory response. The public-concern inquiry requires a fact-sensitive assessment of content, form, and context. *Connick,* 461 U.S. at 147–48. The causation inquiry likewise depends on facts concerning temporal sequence, decisionmaker knowledge, retaliatory animus, and adverse action. Plaintiff has pleaded those facts plausibly. *Compl.* ¶¶ 39–48, 96–103.

Kelly's request that the Court construe ambiguity in his favor is inconsistent with Rule 12(c).

Kelly relies heavily on *Campbell* because the Fourth Circuit ultimately granted qualified immunity on the First Amendment claim there. But *Campbell* does not require dismissal here. *Campbell* held that the plaintiff's complaint touched matters of public concern; it granted qualified immunity only after examining a record and concluding that, given the state of the law and the particular facts, officials did not violate a clearly established right. *Campbell*, 483 F.3d at 269–72. Since *Campbell*, the Fourth Circuit has repeatedly recognized the public-concern character of speech exposing law-enforcement misconduct and abuse of authority. *Durham*, 737 F.3d at 302–04; *Andrew*, 561 F.3d at 268–69. A reasonable command-level officer in Defendant Kelly's position would have understood that retaliating against a deputy for reporting sexual misconduct and abuse of authority within the sheriff's office violates the First Amendment.

Qualified immunity does not justify judgment on the pleadings.

## II. The Complaint Plausibly States Fourteenth Amendment Stigma-Plus and Procedural Due Process Claims Against Defendant Kelly

Defendant Kelly's Fourteenth Amendment argument is equally premature. He does not contend that the alleged "substantiated allegation(s) of untruthfulness" label is non-stigmatizing, that a law-enforcement dishonesty designation is professionally harmless, or that a name-clearing hearing was unnecessary if Defendants published false stigmatizing charges in connection with Plaintiff's separation. Defendant Kelly argues only that the Complaint fails to connect him personally to the deprivation. That argument fails because

the Complaint alleges Kelly's command role and participation in Plaintiff's discipline, treatment, and separation, and Count II and Count III allege that all Individual Defendants imposed and published stigma and denied process.

**A. Plaintiff plausibly alleges a protected liberty interest and stigma-plus deprivation.**

A public employee states a stigma-plus liberty-interest claim by alleging that stigmatizing charges were made public by the employer, were made in conjunction with termination or demotion, were false, and seriously damaged the employee's standing or foreclosed employment opportunities. *Sciolino v. City of Newport News*, 480 F.3d 642, 646–50 (4th Cir. 2007); *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 308–09 (4th Cir. 2006). The remedy for such a deprivation is a meaningful opportunity to clear one's name. *Sciolino*, 480 F.3d at 649–50.

The Complaint satisfies these elements. It alleges that Defendants imposed stigmatizing accusations going directly to Plaintiff's honesty and fitness for duty in law enforcement, including "bias against children" and "substantiated allegation(s) of untruthfulness." *Compl.* ¶¶ 28–38, 81–85, 105–106. It alleges publication through official channels, including disciplinary documentation, credibility determinations affecting Plaintiff's ability to testify, and the F-5 Report transmitted to the State. *Compl.* ¶¶ 31–34, 78–83, 106. It alleges the stigma was connected to demotion, reassignment, investigation status, coerced resignation/constructive discharge, and separation. *Compl*. ¶¶ 29–34, 58–60, 75–85, 107. It alleges falsity and lack of basis, including the absence of a criminal investigation, Commission rule violation, evidentiary hearing, or meaningful opportunity to respond before publication. *Compl.* ¶¶ 80–83, 105–111. And it alleges concrete harm:

Plaintiff was rejected by the Lincoln County Sheriff's Office and Troutman Police Department because of the Giglio/F-5 credibility designation. *Compl.* ¶¶ 84–85, 90–95, 109.

Those allegations state a stigma-plus claim under *Sciolino* and *Ridpath*.

**B. The Complaint plausibly connects Kelly to the Fourteenth Amendment violations.**

Kelly contends that the Complaint names Brown as the signer of the F-5 and Turk as the originator of the earlier "bias" narrative, and therefore cannot proceed against Kelly. That argument imposes a proof burden at the pleading stage and ignores the Complaint's allegations that Kelly participated in the relevant command-staff conduct.

The Complaint alleges that Kelly was a command-level CCSO officer with supervisory authority who "received and/or acted upon reports of misconduct and participated in decisions and actions relevant to Plaintiff's discipline, treatment, and separation." *Compl.* ¶ 18. The Fourteenth Amendment counts incorporate that allegation and further allege that "Defendants" imposed and published stigmatizing credibility accusations, acted through official processes, connected the stigma to adverse employment consequences, and denied Plaintiff any meaningful name-clearing process. *Compl.* ¶¶ 104–118. Those allegations are not impermissibly vague in context. They identify the alleged deprivation, the official processes used, the categories of decisions in which Kelly participated, and the injuries that resulted.

Defendant Kelly's interpretation would require Plaintiff, before discovery, to know exactly which command-level Defendant said what during internal deliberations, who

reviewed or approved each component of the disciplinary and separation process, and who participated in decisions not reflected on the face of the F-5. That is not the pleading standard. Section 1983 requires personal involvement or an affirmative causal connection, but personal involvement may be alleged through participation in the course of conduct that caused the deprivation. *Vinnedge,* 550 F.2d at 928. Plaintiff has done so by alleging Defendant Kelly's command role, his receipt and mishandling of the protected misconduct report, the retaliatory escalation that followed, and his participation in decisions and actions relevant to Plaintiff's discipline, treatment, and separation. *Compl.* ¶¶ 18, 39–48, 100–110, 115–118.

Defendant Kelly's reliance on cases criticizing undifferentiated group pleading does not warrant dismissal. The Complaint does not merely say "all Defendants harmed Plaintiff." It alleges Kelly's role and conduct: he was a command-level officer; he received Plaintiff's sexual-misconduct report; he discouraged formal accountability by suggesting an anonymous-note process; and he participated in discipline, treatment, and separation decisions. *Compl.* ¶¶ 18, 39–42. The fact that Brown signed the F-5 does not foreclose liability for other command officials who allegedly participated in the process that produced the stigmatizing separation, denied Plaintiff a meaningful opportunity to respond, or contributed to the official dissemination of credibility stigma. *Compl.* ¶¶ 78–89, 104–118.

This is particularly true because the Complaint pleads an integrated retaliatory and stigma-based campaign rather than an isolated clerical act. The F-5 designation was the culmination of earlier retaliatory scrutiny, discipline, isolation, coercive internal-affairs procedures, and threatened dishonesty branding. *Compl.* ¶¶ 45–48, 57–73, 75–85.

Defendant Kelly is alleged to have participated in decisions and actions relevant to that discipline, treatment, and separation. *Compl.* ¶ 18. Whether discovery ultimately proves that Kelly's participation was sufficient for liability is a merits question.

**C. Plaintiff plausibly alleges denial of procedural due process and a name-clearing hearing.**

Count III alleges that Defendants deprived Plaintiff of a liberty interest by recording, adopting, and transmitting official "untruthfulness" branding in connection with her separation and without constitutionally adequate process. *Compl.* ¶¶ 112–118. Specifically, Defendants allegedly failed to provide meaningful pre-publication notice that CCSO intended to mark "substantiated allegation(s) of untruthfulness," failed to disclose evidence, failed to provide a meaningful opportunity to respond, failed to provide a hearing at which Plaintiff could confront and respond to adverse evidence, failed to provide a name-clearing hearing before or after publication, and failed to provide written findings or a reliable evidentiary basis. *Compl.* ¶¶ 83, 86–89, 115–118.

Under *Sciolino*, an employee who plausibly alleges stigmatizing charges likely to be made available to prospective employers is entitled to seek a name-clearing opportunity. *Sciolino,* 480 F.3d at 649–50. Plaintiff alleges not merely likely dissemination, but actual employment consequences from the Giglio/F-5 designation. *Compl.* ¶¶ 84, 92. The due process claim is therefore plausible.

Defendant Kelly's only response is personal involvement. For the reasons above, the Complaint plausibly alleges his involvement in the command-level decisions and actions leading to Plaintiff's discipline, treatment, and separation, and it alleges that the

Individual Defendants denied the required process. *Compl.* ¶¶ 18, 39–48, 78–89, 112–118. That is enough to proceed to discovery.

## III. Any Official-Capacity Claim Against Kelly Need Not Drive the Motion and Should Not Result in Merits Dismissal of Plaintiff's Individual-Capacity Claims

Defendant Kelly also suggests that any official-capacity claim against him would be duplicative of the official-capacity claim against Sheriff Brown. Plaintiff's substantive federal claims against Kelly are individual-capacity claims. *Compl.* ¶¶ 96–118. To the extent the caption names Defendant Kelly in his official capacity, Plaintiff does not oppose treating the official-capacity claim against Kelly as redundant of the official-capacity claim against Sheriff Brown, provided that such treatment does not affect Plaintiff's individual-capacity claims against Kelly or Plaintiff's claims against Brown in his official capacity as final policymaker.

But that narrow issue does not justify the relief Defendant Kelly seeks. His motion asks for dismissal of "all claims asserted against him" with prejudice. The Complaint plausibly states individual-capacity claims against Kelly under the First and Fourteenth Amendments. The Court should deny the motion as to those claims.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant Brian Kelly's Motion for Judgment on the Pleadings.

Respectfully submitted, this 9th day of June, 2026

**ADKINS LAW, PLLC**

By: /s/ C. Christopher Adkins
C. Christopher Adkins
N.C. Bar No. 46950
9620 Sherrill Estates Road
Huntersville, North Carolina 28078
Phone: (704) 274-5677
Fax: (877) 208-7577
chris@huntersvillelawyer.com
Attorney for Plaintiff

**PLAINTIFF'S CERTIFICATE OF COMPLIANCE WITH STANDING ORDER REGARDING ARTIFICIAL INTELLIGENCE**

Pursuant to the June 18, 2024, Standing Order of this Court, *In Re: Use of Artificial Intelligence, 3:24-mc-104*, the undersigned certifies as follows:

1. No artificial intelligence was employed in doing the research for the preparation of this Memorandum, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg, as well as Google and Google Scholar;
2. Every statement and every citation to authority contained in this memorandum has been checked by an attorney in this case for accuracy as to the proposition for which it is offered and the citation to authority provided.

This 9th day of June, 2026

By: /s/ C. Christopher Adkins

**CERTIFICATE OF SERVICE**

I hereby certify that on this 9th day June 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

This 9th day of June, 2026.

By: /s/ C. Christopher Adkins