IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

Case No.: 5:26-cv-00041 MEO-DCK

| | | |
|---|---|---|
| VICTORIA JOLLY<br><br>Plaintiff,<br><br>v.<br><br>SHERIFF DONALD G. BROWN II, in his individual and official capacities as Sheriff of Catawba County, AARON TURK, in his individual and official capacities, BRIAN KELLY, in his individual and official capacities, THAD SCRONCE, in his individual and official capacities, MIKE HOYLE, in his individual and official capacities, and JOHN DOE SURETY,<br><br>Defendants. | ) | **DEFENDANTS SHERIFF DONALD G. BROWN, II, AARON TURK, THAD SCRONCE AND MIKE HOYLE'S MEMORANDUM OF LAW IN SUPPORT OF THEIR PARTIAL MOTION FOR JUDGMENT ON THE PLEADINGS** |

NOW COMES Defendants Sheriff Donald G. Brown, II, Aaron Turk, Thad Scronce, and Mike Hoyle, in their individual and official capacities, (hereinafter collectively referenced as "Defendants" or "CCSO"), by and through the undersigned counsel, respectfully submitting this Memorandum of Law in Support of their Partial Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. As shown herein, Defendants are entitled to judgment on the pleadings as to Count I, Count IV, and Count V of Plaintiff's Complaint.

## STATEMENT OF THE CASE

Plaintiff filed her Complaint with this Court on February 26, 2026, against these Defendants and co-defendant Brian Kelly. [D.E. 1]. The Complaint asserts five causes of action:

First Amendment retaliation under 42 U.S.C. § 1983 (Count I); Fourteenth Amendment liberty-interest or stigma-plus liability under § 1983 (Count II); Fourteenth Amendment procedural due process liability under § 1983 (Count III); official-capacity/final-policymaker liability against Sheriff Brown under § 1983 (Count IV); and disability discrimination against Sheriff Brown in his official capacity under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 (Count V). [D.E. 1 ¶¶ 96–131]. Thereafter, Defendants filed an Answer to the Complaint on May 26, 2026. [D.E. 8] and an Amended Answer on June 1, 2026. [D.E. 10].

As stated herein, Plaintiff fails to plead facts sufficient to state a plausible First Amendment retaliation claim, a derivative official-capacity claim, or a Rehabilitation Act claim. Accordingly, Defendants now timely move for judgment on the pleadings as to Counts I, IV, and V under F.R.C.P. Rule 12(c).

## STATEMENT OF FACTS

Plaintiff is a former deputy sheriff whose employment with the Catawba County Sheriff's Office ("CCSO") began on or about January 9, 2021. [D.E. 1 ¶ 13]. During her employment, she performed patrol, investigative, and community-facing assignments. *Id.* While employed at CCSO, Plaintiff made a complaint to a supervising officer, Defendant Kelly, concerning inappropriate workplace conduct directed towards her by another deputy. *Id.* ¶ 39-40.

In April 2023, Plaintiff was assigned to investigate allegations involving a juvenile. *Id.* ¶ 26. Following that investigation, CCSO issued written disciplinary action concerning Plaintiff's handling of the matter, which included and relied upon Plaintiff's actions during a recorded interview conducted in April 2023. *Id.* ¶¶ 27-29. As a result, CCSO issued a demotion in rank and division reassignment to Plaintiff. *Id.* ¶ 29. At some point thereafter, Plaintiff was treated as Giglio-impaired due to CCSO's determination that her handling of the juvenile matter reflected a

demonstrable "bias" against children. *Id.* ¶ 31.

On December 2, 2025, Plaintiff was involved in a motor vehicle accident which allegedly resulted in a concussion and mild traumatic brain injury (TBI). *Id.* ¶ 49. After receiving medical treatment, Plaintiff was placed on light-duty work status with CCSO. [D.E. 10 ¶ 53]. While on light-duty status, CCSO became aware of conduct in which Plaintiff eavesdropped twice on conversations between superior officers through a closet wall. *Id.* ¶ 57. Plaintiff was not included in these meetings and was not designated by CCSO as someone to be privy to those confidential discussions. *Id.* In response to this misconduct by Plaintiff, CCSO placed her on paid investigative status and initiated an internal investigation. *Id.*

Plaintiff remained on paid investigative status while the Internal Affairs investigation proceeded. *Id.* Although Plaintiff contends that she was limited in her duties, it is undisputed that she continued receiving pay during this time. As the investigation continued, Plaintiff was questioned by CCSO personnel about the eavesdropping incident. *Id.* While questioned, and prior to completion of the investigation, Plaintiff chose to resign her employment. *Id.* After Plaintiff resigned, CCSO completed and submitted the required F-5 Report of Separation and provided Plaintiff with a name-clearing hearing. *Id.* ¶¶ 78, 88.

## LEGAL STANDARD

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, a judgment on the pleadings can be rendered after the pleading phase has concluded. Fed R. Civ. P. 12(c) (2025). Importantly, Rule 12(c) motions test only the sufficiency of the complaint, leaving unresolved the merits of the plaintiff's "claims or any disputes of fact." *Massey v. Ojaniit*, 759 F.3d 343, 353 (4th Cir. 2014). In deciding a Rule 12(c) motion, the Court should accept all well-pleaded allegations as true and draw all reasonable conclusions in favor of the complaining party. *Id.* (citing *Edwards v. City of*

*Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). However, accepting all well-pleaded allegations as true does not oblige the Court to "accept allegations that represent unwarranted inferences, unreasonable conclusions, or arguments." *Id.* (citing *Blankenship v. Manchin*, 471 F.3d 523, 529 (4th Cir. 2006) (internal quotation marks omitted). Therefore, by applying the foregoing standards, a complaint will survive "only if it states a plausible claim" upon which relief can be granted. *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)) (internal quotation marks omitted).

## LEGAL ARGUMENT

### I. Plaintiff's claim of retaliation under 42 U.S.C. § 1983 fails as a matter of law.

When a government employee sues their employer for First Amendment retaliation under 42 U.S.C. § 1983, the employee must prove that "(1) [He] was speaking as a citizen upon a matter of public concern [and not] as an employee about a matter of personal interest; (2) [His] interest in speaking upon the matter of public concern outweighed the government's interest in providing effective and efficient services to the public; and (3) [His] speech was a substantial factor in the [adverse employment action]." *Penley v. McDowell County Board of Education,* 876 F.3d 646, 654 (4th Cir. 2017) (citing *McVey v. Stacy,* 157 F.3d 271, 277-78 (4th Cir. 1998)). The initial burden of proving retaliation in violation of the First Amendment lies with the plaintiff; if they are successful in making that showing, the government entity may "still avoid liability if [they] can show, by a preponderance of the evidence, that the decision to terminate the plaintiff would have been made even in the absence of the protected expression." *Wagner v. Wheeler*, 13 F.3d 86, 90 (4th Cir. 1993) (emphasizing that the protected speech must have been a "but-for cause" of the adverse employment action).

Defendants contend that Plaintiff's resignation was not motivated by her previous sexual misconduct allegations against a fellow deputy. CCSO investigated Plaintiff because of her own misconduct, not because she reported misconduct by another employee. Even assuming *arguendo*

that Plaintiff's reports and the subsequent investigation are sufficiently connected, her claim nevertheless fails as a matter of law. Plaintiff's reports were not constitutionally protected speech, and Plaintiff cannot establish the requisite causal connection between her reports and any adverse employment action. Alternatively, even if Plaintiff has plausibly alleged a constitutional violation, the individual Defendants are entitled to qualified immunity because the alleged violation was not clearly established under the particular circumstances presented.

### A. Plaintiff's Report of Sexual Misconduct was Not Protected Speech Under the First Amendment.

To establish a First Amendment retaliation claim, Plaintiff must first demonstrate that she engaged in constitutionally protected speech. She cannot do so here because her report did not address a matter of public concern and was made pursuant to her official duties as a CCSO employee. Either deficiency independently precludes First Amendment protection.

#### 1. Plaintiff's Report Did Not Address a Matter of Public Concern.

The threshold inquiry for allegations of retaliation against protected speech is whether the employee "*spoke as a citizen on a matter of public concern.*" *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006) (emphasis added). "If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." *Id.* Speech addresses a matter of public concern if "it involves an issue of social, political, or other interest to a community." *Kirby v. City of Elizabeth City*, 388 F.3d 440, 446 (4th Cir. 2004). Conversely, "[p]ersonal grievances, complaints about conditions of employment, or expressions about other matters of personal interest" are not matters of public concern protected by the First Amendment. *Stroman v. Colleton Cnty. Sch. Dist.*, 981 F.2d 152, 156 (4th Cir. 1992).

While "[c]omplaints of sexual harassment are not *per se* matters of public concern," whether such complaints are protected depends upon the content, form, and context of the speech.

*Campbell v. Galloway*, 483 F.3d 258, 269 (4th Cir. 2007). The Fourth Circuit has instructed courts to undertake a fact-specific inquiry, considering factors such as the number of victims, the number of alleged offenders, the positions of authority involved, and whether the complaint seeks to expose broader institutional wrongdoing or merely addresses an individual workplace dispute. *See Id.*

In *Campbell*, the plaintiff's complaints extended beyond isolated incidents and sought to expose broader patterns of sexual harassment within the police department, including misconduct affecting multiple officers and conduct directed toward members of the public. *Id.* at 269-70. The court therefore concluded that the plaintiff's speech involved matters of public concern because it reached well beyond a personal employment dispute and implicated systemic misconduct. *Id.* at 270.

Comparatively, Plaintiff's allegations are materially different. Plaintiff alleges unwanted advances by a single CCSO officer and identifies no other victims, no pattern of similar misconduct, and no widespread institutional deficiencies. [D.E. 1¶¶ 39, 43]. Unlike the plaintiff in *Campbell*, Plaintiff did not report a department-wide culture of harassment, misconduct affecting multiple employees, or conduct impacting members of the public. Rather, Plaintiff's report concerned her own interactions with a single coworker and sought redress for a personal workplace grievance.

Importantly, courts have repeatedly rejected any categorical rule that allegations of sexual harassment automatically constitute speech on a matter of public concern. *Campbell*, 483 F.3d at 269. Instead, the inquiry remains focused on the content, form, and context of the particular speech at issue. Here, those factors weigh decisively in favor of finding that Plaintiff raised a private employment matter rather than an issue of public concern. Where, as here, speech reflects an

"essentially private" workplace dispute rather than an effort to expose systemic wrongdoing, the First Amendment does not provide constitutional protection. *See Id.* at 268-70.

Accordingly, Plaintiff cannot establish the public-concern requirement necessary to support a First Amendment retaliation claim.

**2. Plaintiff's Report Was Made Pursuant to Her Official Duties as a CCSO Employee.**

Even assuming Plaintiff's report touched upon a matter of public concern, her claim independently fails because she was not speaking as a private citizen. The Supreme Court has explained that this inquiry is a practical one and focuses on whether the speech itself was made pursuant to the employee's professional responsibilities. *Garcetti*, 547 U.S. at 424-25. The inquiry is a practical one that focuses on the duties the employee was expected to perform, rather than formal job descriptions. *Id.* at 424-25. Thus, when speech "owes its existence to a public employee's professional responsibilities," the employee is not speaking as a private citizen for First Amendment purposes. *Id.* at 421.

Here, Plaintiff's own allegations establish that her report was made through CCSO's internal reporting structure and pursuant to obligations imposed by her employment. Plaintiff does not allege that she reported her concerns to the public, the media, elected officials, or any outside oversight body. Nor does she allege that she sought to expose systemic governmental wrongdoing to the community. Rather, Plaintiff alleges only that she reported alleged workplace misconduct involving a fellow deputy through CCSO's internal channels. By its nature, the report was made within the scope of her employment relationship and through mechanisms maintained by CCSO for employee complaints.

Importantly, CCSO policy imposes an affirmative duty upon employees to report conduct inconsistent with law or agency policy. Employees are required to report misconduct, including

harassment, discrimination, and retaliation, through designated internal channels, and failure to do so may subject the employee to disciplinary action. As alleged, Plaintiff's report therefore was not voluntary citizen speech undertaken on her own initiative; it was speech that existed because of obligations imposed upon her as a CCSO employee. Under *Garcetti*, speech made pursuant to such employment responsibilities is not protected by the First Amendment.

Courts applying *Garcetti* in the law-enforcement context have repeatedly reached this conclusion. Courts applying *Garcetti* in the law-enforcement context have repeatedly reached this conclusion. In *Hamilton v. Mayor & City Council of Baltimore*, a police officer reported misconduct through Internal Affairs pursuant to departmental requirements. 807 F. Supp. 2d 331, 342-43 (D. Md. 2011). The court held that because departmental policy imposed an affirmative obligation to report misconduct, the plaintiff was acting pursuant to her duties as an employee rather than as a private citizen. *Id.* Likewise, in *Butterworth v. Prince George's County*, the court held that an officer's report of alleged misconduct by a fellow officer was unprotected because departmental orders required such reporting through the chain of command. 2023 WL 2351840, at *7-8 (D. Md. Mar. 3, 2023).

These decisions are persuasive because they apply the same principle articulated in *Garcetti*: an employee does not transform required workplace reporting into protected citizen speech simply by reporting misconduct through channels established and mandated by the employer. Plaintiff's theory would effectively convert speech that CCSO required her to make into speech insulated from CCSO regulation, a result inconsistent with *Garcetti's* directive that speech arising from professional responsibilities falls outside First Amendment protection.

The form and context of Plaintiff's speech further confirm that she was acting as an employee rather than as a citizen. Plaintiff reported her concerns internally through CCSO's

supervisory structure. She did not seek public accountability, expose widespread governmental misconduct, or engage in public discourse regarding matters affecting the community at large. Instead, she utilized internal employment procedures designed to address workplace complaints. The exclusively internal nature of her report strongly supports the conclusion that she spoke in her capacity as a CCSO employee. See *Garcetti*, 547 U.S. at 421-22.

Accordingly, even if Plaintiff's allegations implicated a matter of public concern, her report was made pursuant to duties imposed upon her by CCSO and through the agency's internal reporting channels. Because Plaintiff was acting as an employee rather than as a private citizen, her speech is not entitled to First Amendment protection and cannot support a retaliation claim under § 1983.

**B. Plaintiff Cannot Establish That Her Report Was a Substantial or Motivating Factor in Any Adverse Employment Action.**

Even if Plaintiff engaged in protected speech, she cannot establish the requisite causal connection between her reports and any adverse employment action. To succeed on a First Amendment retaliation claim, a plaintiff must satisfy a rigorous causation requirement, meaning "it is not enough that the protected expression played a role … in the retaliation; claimant must show that *but for* the protected expression," the employer would not have initiated the adverse employment action. *Huang v. Board of Governors of University of North Carolina,* 902 F.2d 1134, 1140 (4th Cir. 1990) (emphasis added) (internal quotation marks omitted). This standard requires the plaintiff to demonstrate that the plaintiff's speech was a "substantial" or "motivating factor" in the adverse employment action. *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 287 (1977).

Mere temporal proximity between the protected activity and the challenged action is insufficient to satisfy this burden. *See Hughes v. Bedsole,* 48 F.3d 1376, 1387 (4th Cir. 1995)

(explaining that "temporal proximity…is simply too slender a reed on which to rest a § 1983 retaliatory discharge claim," particularly where the employer proffered a legitimate, non-retaliatory reason for the adverse employment action). Accordingly, where independent, legitimate grounds support the challenged action, temporal proximity alone cannot establish that the protected conduct was a "but for" cause of the employment decision. *See Id.* at 1387-88; *See Raub v. Campbell,* 785 F.3d 876, 885 (4th Cir. 2015).

Furthermore, the Fourth Circuit has held that filing a First Amendment claim does not shield an employee from legitimate investigations or discipline for unrelated misconduct. *See Liverman v. City of Petersburg,* 844 F.3d 400, 412 (4th Cir. 2016). As such, an employer may lawfully investigate and impose discipline where it is supported by independent evidence of workplace violations, even if the employee has engaged in protected activity. *See id.*

Plaintiff offers no specific allegations and provides no particularized evidence showing that her alleged protected speech was a motivating factor in her resignation. Rather, Plaintiff alleges with minimal specificity that CCSO engaged in "selective discipline" only after she made her report. [D.E. 1 ¶ 46] ("Plaintiff was criticized and disciplined over minor or trivial incidents that were not treated as disciplinary matters for similarly situated male deputies, and routine events were used as occasions to fault Plaintiff rather than to support her."). This theory of causation rests almost entirely on the sequence of events and alleged temporal proximity, which does not give rise to the causal nexus sufficient to prove retaliatory animus.

Indeed, the pleadings demonstrate that CCSO's investigation arose from Plaintiff's own conduct. Specifically, the investigation followed two incidents in which Plaintiff eavesdropped through a closet wall to overhear supervisors' discussions of confidential information. This conduct plainly warranted an internal investigation and ultimately supported Plaintiff's placement on

investigative status without pay. Nothing about the initiation, scope, or progression of the investigation supports a plausible inference that retaliatory animus was the driving force behind CCSO's actions.

Plaintiff's allegations of selective discipline are merely "naked assertions" "devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Her retaliation theory also rests on temporal proximity, which, standing alone, is insufficient to establish retaliatory causation. *See Hughes*, 48 F.3d at 1387–88. Because the allegations reflect legitimate, nonretaliatory grounds for CCSO's investigation, Plaintiff cannot plausibly allege that her reports were a substantial or motivating factor in, much less the but-for cause of, her resignation. Accordingly, Plaintiff's § 1983 retaliation claim fails as a matter of law.

**C. Alternatively, the Individual Defendants Are Entitled to Qualified Immunity.**

Qualified immunity protects public officials from individual-capacity liability unless the plaintiff alleges the violation of a constitutional right that was clearly established at the time of the challenged conduct. *Hunter v. Town of Mocksville*, 789 F.3d 389, 396–97 (4th Cir. 2015). Because qualified immunity provides immunity from suit, courts should resolve the issue at the earliest appropriate stage when the pleadings permit them to do so. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

Plaintiff cannot overcome qualified immunity by defining the asserted right at a high level of generality. Rather, the relevant question is whether existing precedent clearly established that an internal report concerning alleged advances directed solely at the employee, and made through a mandatory reporting channel, constituted protected citizen speech on a matter of public concern. *Campbell* confirms that workplace-harassment complaints occupy a fact-dependent boundary between speech addressing matters of public concern and speech concerning private personnel

grievances. 483 F.3d at 268–72. Although *Campbell* concluded that the particular speech at issue implicated matters of public concern, the court nevertheless granted qualified immunity because officials lacked clear guidance regarding whether the speech was constitutionally protected. *Id.* at 271–72; *see also Pike v. Osborne*, 301 F.3d 182, 185 (4th Cir. 2002).

Qualified immunity is especially appropriate here because Plaintiff's allegations implicate two independent and fact-intensive First Amendment inquiries. Reasonable officials could have concluded not only that Plaintiff's report concerned a private workplace matter rather than a matter of public concern, but also that the report was made pursuant to Plaintiff's employment responsibilities and mandatory reporting obligations rather than as a private citizen. *See Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). Given the absence of controlling precedent clearly establishing that an employee's internal report under these circumstances constituted protected citizen speech on a matter of public concern, the Individual Defendants could not have been on notice that their conduct violated the First Amendment.

Here, Plaintiff's alleged report was narrower than the speech at issue in *Campbell* and was made pursuant to an express employment reporting obligation. At minimum, reasonable officials could have understood Plaintiff's report as employee speech concerning a private workplace matter. Because existing law did not place the constitutional question beyond debate under the circumstances alleged, the individual Defendants are entitled to qualified immunity on Count I.

## II. Plaintiff Cannot Establish Municipal Liability Under *Monell*.

Under *Monell*, municipal liability may not "be predicated upon a respondeat superior theory" and instead must arise from a municipal policy or custom. *Burgess v. Goldstein*, 997 F.3d 541, 562 (4th Cir. 2021); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). A policy or custom for which a municipality can be held liable may arise through: (1) an express policy, such as a

written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as failure to properly train officers, that 'manifest[s] deliberate indifference to the rights of citizens'; or (4) through a practice that is so 'persistent and widespread' as to constitute a 'custom or usage' with the force of law." *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999)). Plaintiff cannot establish municipal liability under any of these theories.

**A. Plaintiff Cannot Identify Any Official CCSO Policy.**

When a plaintiff proceeds on a policy-based theory, the Fourth Circuit requires that the complaint "identify the offending municipal policy with precision," rather than relying on generalized or conclusory allegations of its existence. *Carter*, 164 F.3d at 218. The specific policy must be a "formal rule[] or understanding … that [is] intended to, and do[es] establish fixed plans of action to be followed under similar circumstances consistently and over time." *Howard v. City of Durham,* 68 F.4th 934, 952 (4th Cir. 2023).

Here, Plaintiff identifies no written policy, ordinance, directive, or formal CCSO policy authorizing the alleged constitutional violations. Although Plaintiff alleges that she was subjected to a retaliatory investigation, coerced resignation, and stigmatizing F-5 reporting, she points to no official CCSO policy requiring or endorsing such conduct. Instead, Plaintiff relies entirely upon her own circumstances and employment dispute. Those allegations fall far short of establishing the existence of a municipal policy under *Monell*.

As set forth above, a single employee's disagreement with an employment decision does not transform that decision into official municipal policy for purposes of § 1983 liability.

**B. Plaintiff Cannot Establish a Widespread Custom or Practice.**

Alternatively, a municipality may be liable under *Monell* based on the existence of an

informal custom or practice that, although not formally approved, is so persistent and widespread as to carry the force of law. *See Spell v. McDaniel,* 824 F.2d 1380, 1387 (4th Cir. 1987). But the Fourth Circuit has explicitly stated that prevailing under such a theory of implicit custom to establish *Monell* liability is "no easy task." *Owens v. City of Baltimore,* 767 F.3d 379, 402 (4th Cir. 2014). Given the "persistent and widespread" conduct requirement, a single incident of unconstitutional activity "is not sufficient to prove the existence of a municipal custom." *Estate of Jones by Jones v. City of Martinsburg, West Virginia,* 961 F.3d 661, 672 (4th Cir. 2020) (quoting *Semple v. City of Moundsville,* 195 F.3d 708, 713-14 (4th Cir. 1999)). Therefore, for a pattern of comparable practices to be sufficiently alleged, plaintiffs will need to provide more than mere "scattershot" accusations of historical constitutional violations, because without some level of detail, such allegations are "insufficiently precise to establish the existence of a municipal policy or custom." *See Carter*, 164 F.3d at 219.

Plaintiff cannot establish this. Plaintiff relies exclusively on her own experience as the basis for liability. She identifies no comparable incidents, no other employees who experienced similar treatment, no prior complaints of retaliation for protected speech, and no pattern of similar constitutional violations within CCSO. Instead, Plaintiff offers precisely the type of conclusory and "scattershot" allegations that the Fourth Circuit has held are insufficient to establish a municipal custom. *See Carter*, 164 F.3d at 219. At most, the Complaint describes a single incident involving Plaintiff herself, which cannot plausibly establish the existence of a persistent and widespread custom carrying the force of law. *See Estate of Jones*, 961 F.3d at 672.

Plaintiff also fails to allege facts showing that any purported custom was the moving force behind the alleged constitutional deprivation. *See Spell*, 824 F.2d at 1387. Municipal liability cannot rest on the mere occurrence of an alleged constitutional violation. Rather, a plaintiff must

establish an affirmative causal link between the identified custom and the specific injury alleged. *Id.* Because Plaintiff identifies no widespread practice, much less one that caused the alleged retaliation, her municipal-liability claim fails as a matter of law.

Accordingly, Plaintiff cannot establish municipal liability through a custom-or-practice theory.

**C. Plaintiff Cannot Establish Liability Based Upon a Decision of a Final Policymaker or Ratification.**

Plaintiff alleges that Sheriff Brown is CCSO's final policymaker with respect to personnel decisions and internal affairs matters. [D.E. 1 ¶ 120]. However, the mere fact that an official possesses final policymaking authority does not create municipal liability. Rather, Plaintiff must plausibly allege that Sheriff Brown made a deliberate choice to pursue a particular course of action and that the resulting policy decision caused the alleged constitutional deprivation. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 481–84 (1986).

Here, Plaintiff identifies no such policy decision. Plaintiff alleges generally that Sheriff Brown was responsible for employee discipline, internal investigations, and separation decisions, but she points to no official decision establishing or implementing an unconstitutional policy. Instead, Plaintiff relies upon a single employment dispute arising from her investigation, resignation, and subsequent F-5 reporting. These allegations concern an isolated personnel matter, not the implementation of a municipal policy or policy decision capable of giving rise to liability under *Monell*. Municipal liability cannot be premised on the mere exercise of discretionary authority in a particular employment dispute. *See Pembaur*, 475 U.S. at 481–84.

Plaintiff's ratification theory fares no better. Plaintiff alleges that Sheriff Brown "ratified" the challenged conduct by approving, authorizing, or knowingly permitting the actions at issue and by signing the F-5 Report of Separation. [D.E. 1 ¶ 122]. However, ratification requires more than

routine approval or administrative processing. A final policymaker must approve both the subordinate's challenged decision and the unconstitutional basis for it. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (plurality opinion). Moreover, Plaintiff alleges that Sheriff Brown signed the F-5 only after Plaintiff's separation from employment. A policymaker's post hoc approval of conduct that has already occurred cannot establish municipal liability where the alleged ratification could not have been the moving force behind the constitutional violation. *See Franklin v. City of Charlotte*, 64 F.4th 519, 537 (4th Cir. 2023).

Plaintiff alleges no facts demonstrating that Sheriff Brown affirmatively directed, approved, or adopted any action that violated Plaintiff's constitutional rights. Rather, Plaintiff primarily relies upon Sheriff Brown's execution of the F-5 following Plaintiff's separation from employment. [D.E. 1 ¶¶ 79, 122]. The completion of an F-5 form is a routine administrative function attendant to an employee's separation and, standing alone, does not establish adoption of an unconstitutional policy or custom. Nor can Plaintiff transform a single employment dispute into municipal liability merely by alleging that Sheriff Brown signed a required separation document. Absent facts showing that Sheriff Brown deliberately approved unconstitutional conduct or established an unconstitutional policy decision, Plaintiff's ratification theory fails as a matter of law.

Accordingly, Plaintiff cannot establish municipal liability through either a final-policymaker or ratification theory.

## III. Plaintiff’s Disability Discrimination Claim Under the Rehabilitation Act Fails as a Matter of Law.

To establish a violation of the Rehabilitation Act, plaintiffs must show that: (1) they have a disability; (2) they were either excluded from participation in or denied the benefits of a public entity’s services, programs, or activities for which they were otherwise qualified; and (3) the

exclusion, denial of benefits, or discrimination was by reason of the disability. *Adams v. Montgomery College (Rockville),* 834 F. Supp.2d 386, 391 (D. Md. 2011). A plaintiff asserting disability discrimination under the Rehabilitation Act bears the initial burden of establishing a prima facie case of discrimination. *Hannah P. v. Coats,* 916 F.3d 327, 342 (4th Cir. 2019) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973)). If Plaintiff satisfies that burden, the burden shifts to Defendants to articulate a legitimate, nondiscriminatory reason for the challenged employment action. *Id.* The burden then returns to Plaintiff to demonstrate that the proffered reason is merely a pretext for discrimination. *Id.* Importantly, the Rehabilitation Act does not shield employees from the consequences of their own misconduct merely because they also suffer from a disability. *Little v. FBI*, 1 F.3d 255, 258 (4th Cir. 1993).

**A. Plaintiff Cannot Establish That She Was Constructively Discharged.**

Plaintiff attempts to satisfy the adverse-employment-action element by alleging that she was constructively discharged. To establish constructive discharge, Plaintiff must demonstrate that CCSO created objectively intolerable working conditions that would compel a reasonable employee to resign and that Plaintiff in fact resigned. *Green v. Brennan*, 578 U.S. 547, 555-56 (2016); *United States EEOC v. Greyhound Lines, Inc.*, 554 F. Supp. 3d 739, 753 (D. Md. 2021). Subjective feelings that resignation was preferable or inevitable are insufficient. *Greyhound Lines*, 554 F. Supp. 3d at 753.

Plaintiff cannot satisfy this demanding standard. She contends that CCSO's Internal Affairs investigation into alleged misconduct constituted an effort to force her resignation. However, investigations into employee misconduct are routine and necessary components of public-agency oversight and do not, standing alone, create objectively intolerable working conditions. Plaintiff's characterization of the investigation as “high stakes” does not transform an otherwise legitimate

investigation into constructive discharge. [D.E. 1 ¶ 68].

Nor do Plaintiff's allegations establish conditions so intolerable that a reasonable employee would have felt compelled to resign. Although Plaintiff alleges that she was presented with an "immediate fork in the road" between resignation and termination, such circumstances do not establish constructive discharge. Employers may investigate alleged misconduct and present employees with difficult employment decisions without creating working conditions that are objectively intolerable. [D.E. 1 ¶ 71]. Moreover, Plaintiff alleges that she voluntarily resigned before the Internal Affairs investigation concluded. Under these circumstances, the Complaint does not plausibly allege that CCSO created conditions so intolerable that a reasonable employee would have felt compelled to resign.

Accordingly, Plaintiff cannot establish that she suffered a constructive discharge.

**B. Plaintiff Cannot Establish That Any Action Was Taken Because of Her Disability.**

Even assuming *arguendo* that Plaintiff could establish constructive discharge, her Rehabilitation Act claim still fails because she cannot demonstrate that any adverse action was taken because of her alleged disability.

The Complaint itself demonstrates that CCSO's actions arose from Plaintiff's own conduct, not from her concussion or mild traumatic brain injury. Plaintiff acknowledges that she was investigated for two incidents involving eavesdropping on conversations between CCSO personnel concerning confidential matters. [D.E. 1 ¶¶ 61-64]. The resulting Internal Affairs investigation focused on that conduct and CCSO's evidence concerning it.

Plaintiff's concussion or mild traumatic brain injury was not the subject of the investigation and bore no relationship to the conduct under review. While Plaintiff alleges that she informed investigators she was experiencing concussion-related symptoms, CCSO's questioning remained

directed toward her conduct rather than any disability. [D.E. 1 ¶¶ 69-70]. Indeed, Plaintiff's own allegations establish that the Internal Affairs investigation was initiated because of the reported eavesdropping incidents. The investigation therefore arose from concerns regarding Plaintiff's conduct, not from knowledge of any alleged disability.

The Rehabilitation Act prohibits discrimination on the basis of disability. It does not prohibit an employer from investigating employee misconduct that is unrelated to a disability, nor does it insulate employees from the consequences of such misconduct merely because they happen to suffer from a medical condition. *Little v. FBI*, 1 F.3d 255, 258 (4th Cir. 1993).

Moreover, the Rehabilitation Act requires Plaintiff to show that any alleged discrimination occurred solely by reason of her disability. Plaintiff's own allegations foreclose such a showing. The Complaint repeatedly alleges that CCSO initiated and conducted the Internal Affairs investigation because of Plaintiff's involvement in two incidents concerning the interception of conversations between CCSO personnel. Thus, even accepting Plaintiff's allegations as true, the challenged actions arose from concerns regarding Plaintiff's conduct, not solely from her alleged disability.

Even assuming Plaintiff could establish a prima facie case, CCSO has articulated a legitimate, nondiscriminatory reason for its actions: Plaintiff's alleged misconduct and the resulting Internal Affairs investigation. Plaintiff was investigated because of two incidents involving the improper interception of conversations between CCSO personnel, not because of any alleged disability. Plaintiff identifies no factual allegations plausibly suggesting that this explanation is pretext for disability discrimination. To the contrary, the allegations of the Complaint demonstrate that CCSO's actions were directed toward Plaintiff's conduct and the consequences thereof, rather than her medical condition.

Accordingly, Plaintiff cannot establish that any adverse action occurred "solely by reason of" her disability.

**C. Plaintiff Cannot Establish a Failure-to-Accommodate Claim.**

Plaintiff alleges that she reported a headache and asked that questioning slow down during the interview. [D.E. 1 ¶ 69]. She does not allege that she requested postponement of the interview, requested leave, requested the presence of a representative or medical provider, or requested any other specific change before the interview began. The allegation that she asked questioners to "slow down," without factual allegations showing what modification was requested, how it was denied, or how a different pace would have enabled her to perform an essential employment function, does not plausibly plead denial of a reasonable accommodation.

Plaintiff also alleges that reasonable accommodations included postponement or modification of the investigation during an "unable to work" period. *Id.* ¶ 126. But the Complaint does not allege that she communicated a request for postponement to Sheriff Brown or another identified decisionmaker before resigning. Nor does it allege facts explaining how suspending an internal investigation was a reasonable accommodation rather than an exemption from an employment process addressing alleged workplace conduct. The Complaint's conclusory designation of the requested measures as "reasonable accommodations" is insufficient.

Plaintiff likewise fails to plausibly allege that postponing or suspending an Internal Affairs investigation constituted a reasonable accommodation under the Rehabilitation Act. The Rehabilitation Act requires reasonable accommodations that enable a qualified employee to perform the essential functions of her position; it does not require an employer to suspend workplace investigations into alleged misconduct. The Complaint contains no factual allegations explaining how the requested modification would have enabled Plaintiff to perform her job duties

or otherwise satisfy the requirements of her position. Instead, Plaintiff alleges that she was in an "unable to work" period, which is inconsistent with her assertion that a temporary modification of the interview process would have enabled her to perform the essential functions of her employment.

Accordingly, Plaintiff fails to plausibly allege a failure-to-accommodate claim under the Rehabilitation Act.

## CONCLUSION

For the foregoing reasons, these Defendants respectfully request that this Court grant their Partial Motion for Judgment on the Pleadings and dismiss the foregoing claims against them **WITH PREJUDICE**.

This the 7th day of October, 2026.

**CRANFILL SUMNER LLP**

BY: */s/ Patrick H. Flanagan*
Patrick H. Flanagan, NC Bar #17407
*Attorney for Defendants Sheriff Donald G. Brown, III, Aaron Turk, Thad Scronce and Mike Hoyle*
P.O. Box 30787
Charlotte, NC 28230
Telephone (704) 332-8300
Facsimile (704) 332-9994
phf@cshlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that I have this 7th day of October, 2026, electronically filed the foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' PARTIAL MOTION FOR JUDGMENT ON THE PLEADINGS** with the Clerk of the Court using the CM/ECF system and by electronic mail, addressed to each party as follows:

Christopher Adkins
**Adkins Law, PLLC**
chris@huntersvillelawyer.com
*Attorney for Plaintiff*

Christopher R. Purkey
**Rech Law, P.C.**
cpurkey@rechlaw.com
*Attorney for Plaintiff*

John L. Wright
**Hedrick Gardner Kinchloe & Garofalo, LLP**
jwright@hedrickgardner.com
*Attorney for Defendant Brian Kelly*

**CRANFILL SUMNER LLP**

BY: */s/ Patrick H. Flanagan*
Patrick H. Flanagan, NC Bar #17407
*Attorney for Defendants Sheriff Donald G. Brown, III, Aaron Turk, Thad Scronce and Mike Hoyle*
P.O. Box 30787
Charlotte, NC 28230
Telephone (704) 332-8300
Facsimile (704) 332-9994
phf@cshlaw.com